UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| RENE GARIBAY-ROBLEDO,<br><br>    Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>    Defendants. | No. 1:25-CV-177-H |

# ORDER

Before the Court is Rene Garibay-Robledo's motion to reconsider his application for a temporary restraining order (TRO). Dkt. No. 8. The Court previously issued an order denying the TRO application because the "binding Fifth Circuit precedent" to which Garibay-Robledo appealed, *Cardenas v. United States*, 826 F.3d 1164 (9th Cir. 2016), was entirely inapposite—being neither relevant nor Fifth Circuit precedent at all. Dkt. No. 5 at 3. Garibay-Robledo now moves the Court to reconsider. Dkt. No. 8 at 1. He now abandons reliance on *Cardenas* and instead argues that "[b]y the plain language of the applicable statute, [his] definition falls within" the Immigration and Nationality Act's discretionary-detention provision, not its mandatory-detention provision. *Id.* He contends that "he is not properly classified as an arriving alien subject to mandatory detention" because he "entered the United States without inspection" and "has now lived continuously in the United States for over thirty years." *Id.* But this argument flatly contradicts the statute's plain language and the history of legislative changes enacted by Congress. Thus, the petitioner fails to meet the high bar for emergency relief, and the Court denies the motion.

1.   **Background**

Rene Garibay-Robledo is a Mexican national who illegally entered the United States in 1994. Dkt. No. 1 at 3–4. In August 2025, the Department of Homeland Security initiated removal proceedings against Garibay-Robledo for being unlawfully present in the United States. *Id.* at 4. He is currently detained by U.S. Immigration and Customs Enforcement (ICE). *Id.* at 1.

In early September 2025, an Immigration Judge denied Garibay-Robledo's request for bond, citing a lack of jurisdiction. *Id.* The IJ based this denial on two recent Board of Immigration Appeals precedents: *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025) and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). *Id.* Garibay-Robledo contends that these decisions misconstrue the INA's bond provisions, and he seeks habeas relief from this Court "to compel [a bond] hearing, or release, and further seeks a [TRO] and preliminary injunction ordering Respondents to provide such relief without delay." *Id.* at 1–2; Dkt. No. 8 at 2.

2.   **Legal Standards**

Federal Rule of Civil Procedure 65 governs the issuance of injunctions and TROs. Rule 65(a)(1) provides that "[t]he [C]ourt may issue a preliminary injunction only on notice to the adverse party." Under Rule 65(b), however, the Court may issue a TRO without notice if the moving party satisfies two requirements. First, the moving party must present "specific facts in an affidavit or a verified complaint" clearly demonstrating "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, the moving party's attorney

2

must "certif[y] in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1)(B).

Additionally, a party seeking both a TRO and preliminary injunctive relief must satisfy the four-factor standard for obtaining a preliminary injunction.  *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021).  That standard requires the party seeking relief to establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in the movant's favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest.  *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).  "[I]f a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction."  *Speed v. America's Wholesale Lender*, No. 3:14-CV-3425, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original); *Clark v. Prichard*, 812 F.3d 991, 993 (5th Cir. 1987) (explaining that "[t]he party seeking such relief must satisfy a cumulative burden of proving each of the four elements").

Finally, a motion to reconsider the denial of a TRO is subject to the same standard of review as a motion to alter a judgment under Federal Rule of Civil Procedure 59(e).  *Price v. Tex. Tech Univ. Health & Scis. Ctr. El Paso*, 784 F. Supp. 3d 944, 951 (W.D. Tex. 2025); *Nat'l Urb. League, Inc. v. Urb. League of Greater Dall. & N. Cent. Tex.*, No. 3:15-CV-3617, 2016 WL 124629, at *1 (N.D. Tex. Mar. 30, 2016).  To secure relief upon a motion to reconsider, the movant must show "a manifest error of law or fact or must present newly discovered evidence," and the motion "cannot be used to raise arguments which could, and should, have been made before the judgment issued."  *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d

563, 567 (5th Cir. 2003) (quoting *Rosenzweig v. Azurix Corp.*, 322 F.3d 854, 863–64 (5th Cir. 2003)).

3.  Analysis

As before, Garibay-Robledo fails to demonstrate a substantial likelihood of success on the merits, which is fatal to his request to reconsider the denial of the TRO and preliminary injunction. Thus, even setting aside the heightened standards applicable to motions to reconsider, his motion fails on the merits at this stage. The Court recognizes, however, that it is issuing this order under the accelerated timeframe of a motion for emergency relief. The Court has not yet had the benefit of the government's response to the petition or the petitioner's reply. The Court will, of course, consider and finally resolve the petition only after it has the benefit of full briefing.

A.   The text of the INA weighs heavily against Garibay-Robledo's position.

First, Garibay-Robledo misapprehends the relevant statutory term when he argues that the mandatory-detention provision is inapplicable because he is not an "arriving alien." Dkt. No. 8 at 8. The mandatory-detention provision applies to "applicants for admission," not merely arriving aliens. 8 U.S.C. § 1225(b).[1] To be sure, an arriving alien is an applicant for admission: Subsection 1225(a)(1) defines applicant for admission, in part, as "[a]n alien . . . who arrives in the United States." But the same provision also defines an applicant for admission as "[a]n alien present in the United States who has not been admitted." *Id.* This is not the most intuitive definition of the term, but it is the one that Congress enacted into law. And although courts generally construe statutory terms according to their ordinary

---

[1] While Section 1226(c) also mandates detention for certain classes of aliens, this order refers to Sections 1225 and 1226 as the mandatory- and discretionary-detention provisions, respectively, for the sake of simplicity.

4

meaning, "'[w]hen a statute includes an explicit definition, [the Court] must follow that definition,' even if it varies from a term's ordinary meaning." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)). Thus, given that Garibay-Robledo is "[a]n alien present . . . who has not been admitted," the plain language of the mandatory-detention provision weighs heavily against the petitioner's assertion that he is subject only to discretionary detention.

Although they promulgate a more permissive policy than the current administration, the Executive Office of Immigration Review's regulations drafted following the Illegal Immigration Reform and Immigration Responsibility Act of 1996's (IIRIRA) enactment confirm this understanding of the term "applicants for admission." One such regulation provides that "*[d]espite being applicants for admission*, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (emphasis added). This regulation explains that "[t]he effect of this change is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not." *Id.* The clear implication of this language is that, despite possessing the authority to deny bond to broad classes of aliens, the government declined to exercise the full extent of its authority under the INA.

In July 2025, the DHS issued a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Vazquez v. Feeley*, No. 2:25-CV-1542, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025) (describing the leaked DHS notice and noting that the government did not object to its authenticity). This notice advised that "section 235 of the [INA], rather than section 236"—that is, the mandatory-detention provision, not the

5

discretionary-detention provision—"is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).² The BIA adopted this broader reading of the mandatory-detention provision in *Yajure Hurtado*, 29 I&N Dec. 216. The BIA acknowledged that "for years [IJs] have conducted bond hearings for aliens who entered the United States without inspection," but they did "not recall either DHS or its predecessor, the Immigration and Naturalization Service," ever challenging that practice. *Id.* at 225 n.6.

### B. The statutory history of the INA supports a broad reading of the mandatory-detention provision.

"Statutory history, 'the record of enacted changes Congress made to the relevant statutory text over time,' can also provide helpful context" for interpreting statutory language. *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *BNSF Ry. Co. v. Coos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (emphasis deleted)). And the statutory history of the INA confirms an expansive reading of the term "applicants for admission."

By enacting the IIRIRA, Congress sought to replace the so-called entry doctrine, in which the manner of proceedings turned on whether an alien had entered the country, with a process based on admission. *See Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) ("Prior to the [IIRIRA], the INA assessed status on the basis of 'entry' as opposed to 'admission.'"). Under the entry doctrine, an alien who had entered the United States was entitled to greater procedural protections, including a deportation hearing. *Id.* The result

---

² https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

was a system that rewarded aliens who illegally entered the country with greater procedural protections than those who properly applied for admission at the border.

Thus, the IIRIRA amended the INA to make admission, not entry, the relevant criterion for removal procedures.  *Id.*  The INA defines admission as "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added).  By defining "applicants for admission" broadly enough to encompass both arriving aliens and illegal entrants, Congress removed the previously existing incentives to enter the country illegally.

C. **The authorities Garibay-Robledo cites are not persuasive.**

Garibay-Robledo attaches four recent orders from other district courts within the Fifth Circuit as persuasive authorities for his position.  Dkt. No. 8-1; *Fuentes v. Lyons*, No. 5:25-CV-153, Dkt. No. 15 (S.D. Tex. Oct. 16, 2025); *Ortiz-Ortiz v. Bondi*, No. 5:25-CV-132, Dkt. No. 17 (S.D. Tex. Oct. 15, 2025); *Covarrubias v. Vergara*, No. 5:25-CV-112, Dkt. No. 30 (S.D. Tex. Oct. 8, 2025); *Buenrostro-Mendez v. Bondi*, Civ. A. No. H-25-3726, Dkt. No. 18 (S.D. Tex. Oct. 7, 2025).  In brief, these cases offer the following support to Garibay-Robledo's position: First, the mandatory-detention provision's catchall clause, *see Jennings v. Rodriguez*, 583 U.S. 281, 287–89 (2018), comprises applicants for admission who are (i) not defined in Subsection 1225(b)(1), and (ii) are "seeking admission."  8 U.S.C. § 1225(b)(2)(A).  Second, the more expansive reading of the mandatory-detention provision renders other portions of the INA superfluous.  Respectfully, the Court is not persuaded by these arguments—at least at this preliminary stage of litigation.

First, as a threshold matter, Garibay-Robledo fails to argue, or offer any evidence, that he was not "seeking admission" at the time of his arrest.  *See generally* Dkt. Nos. 1; 8.

7

Accordingly, even if the Court were to accept the reasoning of Garibay-Robledo's cited authorities, it could not yet conclude at this early stage that he is entitled to relief or was likely to succeed on the merits.

Further, the Supreme Court recognized the reference to aliens "seeking entry" as referring to "applicants for admission" in *Jennings*. There, the Court explained that "[Section] 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." 583 U.S. at 297. The way that the statute applies these terms illustrates the point. Subsection 1225(a)(3) provides that "[a]ll aliens . . . [w]ho are applicants for admission *or otherwise seeking admission* . . . shall be inspected." (emphasis added). Subsection 1225(a)(5) states that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission* to the United States." (emphasis added). The logical import of this phrasing is that one who is an applicant for admission is considered to be "seeking admission" under the statute.

The orders in *Ortiz-Ortiz* and *Covarrubias* attempted to distinguish an "applicant for admission" from an alien "seeking admission," noting that the latter "is a present-tense, or current, ongoing action, and varies materially from the passive state of being an applicant." Dkt. No. 8-1 at 18, 33 (quoting No. 5:25-CV-132, Dkt. No. 17 at 6; No. 5:25-CV-112, Dkt. No. 30 at 5). But this appears to place form over substance. There is no material disjunction—by the terms of the statute or the English language—between the concept of "applying" for something and "seeking" something. Black's Law Dictionary defines "applicant" as "[s]omeone who requests something; a petitioner, such as a person who applies for letters of administration." (12th ed. 2024). Thus, an applicant for admission, in

ordinary English usage, is one who requests (or seeks) something. Insofar as the term "applicant for admission" is more passive than "seeking admission," this is inherent in the nature of agent nouns and their corresponding gerunds.

Second, the Court recognizes that many courts have concluded that this broader interpretation of the mandatory-detention provision renders certain subsections of Section 1226 superfluous. But this argument, standing alone, is an insufficient basis to depart from the clear text of the statute. The Supreme Court "has often recognized [that] '[s]ometimes the better overall reading of [a] statute contains some redundancy.'" *Barton v. Barr*, 590 U.S. 222, 239 (2020) (quoting *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019)). More to the point, "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Id.* Indeed, the canons of statutory construction should only "be used to resolve remaining ambiguity," not to inject it where it does not exist. *Moore*, 71 F.4th at 395.

### D.  An evidentiary hearing is not necessary to resolve the motion to reconsider.

"When the district court has sufficient facts before it to make an informed decision on the merits of the habeas petitioner's claim[,] it does not abuse its discretion in failing to conduct an evidentiary hearing." *Gallegos v. Quarterman*, 265 F. App'x 300, 303 (5th Cir. 2008) (citation modified). An evidentiary hearing is required only when the federal court lacks sufficient undisputed facts to make an informed decision. *Barrientes v. Johnson*, 221 F.3d 741, 770 (5th Cir. 2000). Because the ultimate question at issue is one of statutory interpretation, the Court finds that further factual development is not necessary to resolve the motion to reconsider the application for a TRO.

**4.     Conclusion**

The Court thus denies Garibay-Robledo's motion to reconsider his TRO application (Dkt. No. 8) because he failed to carry his burden as to the first element needed to obtain such relief.  Garibay-Robledo's habeas petition (Dkt. No. 1) remains pending.

So ordered on October 24, 2025.

                                                                    _____
                                                                    JAMES WESLEY HENDRIX
                                                                    UNITED STATES DISTRICT JUDGE