UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

RENE GARIBAY-ROBLEDO,

    Petitioner,

v.

KRISTI NOEM, et al.,

    Respondents.

No. 1:25-CV-177-H

## ORDER SETTING HEARING

Before the Court is attorney John M. Bray's motion for leave to file a corrected habeas petition (Dkt. No. 16) and Response (Dkt. No. 15) to this Court's Order to Show Cause (Dkt. No. 14). The motion (Dkt. No. 16) is granted. For the reasons set forth below, however, the Court finds it necessary to conduct an in-person hearing to properly account for the issues identified in the Court's Order to Show Cause.

In September, Bray filed a habeas petition in the Dallas Division of the Northern District of Texas on behalf of petitioner Rene Garibay-Robledo. Dkt. No. 1. The following day, Judge Horan found that the petition was filed in the wrong division and transferred the case to this Court. Dkt. No. 3. As part of the petition, Bray included a request for a temporary restraining order and preliminary injunction, urging the Court that the petitioner was entitled to a bond hearing under "binding Fifth Circuit precedent"—namely, "*Cardenas v. Young*, 826 F.3d 116 (5th Cir. 2016)." *See* Dkt. No. 1 at 1–2, 5–7, 9, 11, 13.

But no such case exists. Rather, the real *Cardenas* is a Ninth Circuit case addressing "the standard of judicial review applicable to [a] visa denial." *Cardenas v. United States*, 826 F.3d 1164, 1167 (9th Cir. 2016). Three days later, the Court issued an order denying the request for a TRO and preliminary injunction, noting that *Cardenas* "is not 'binding Fifth

Circuit precedent' . . . nor does it stand for the proposition that 'noncitizens detained under [the INA] are entitled to individualized bond hearings.'" Dkt. No. 5 at 3 (quoting Dkt. No. 1 at 7, 2).

Weeks later, Bray filed a Motion to Reconsider Application for Temporary Restraining Order, Request for Hearing, and Incorporated Memorandum of Law. Dkt. No. 8. "[G]iven the urgency of the issues presented," Bray asked the Court for an "oral argument at the earliest practicable time." *Id.* at 1. The incorporated memorandum, without explanation, abandoned all reliance on *Cardenas*. *See id* at 1–8. The Court denied the motion, noting this unexplained change in its order. Dkt. No. 9 at 1.

The respondents responded (Dkt. No. 11), and the petitioner replied (Dkt. No. 13). But the reply brief presented additional concerns. Bray disclosed that he had "utilized generative artificial intelligence in the preparation of" his brief in compliance with Local Civil Rule 7.2(f). He assured the Court that he had "independently cross-checked and verified the accuracy of all legal authorities, citations, facts, and arguments" and that "[n]o unpublished, non-existent, or unverifiable authorities were generated or relied upon." Dkt. No. 13 at 2.

But once again, the Court found a troubling flaw. In Section III(B)(2) of Bray's reply, titled "*Matter of M-S-* confirms that § 1226 governs custody once DHS initiates § 240 proceedings," Bray claimed that "the Attorney General's decision in *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019) . . . forecloses DHS's argument" that the petitioner can be detained without bond. *Id.* at 13. Bray then included the following quote, purportedly from page 510 of *Matter of M-S-*: "Once DHS chooses to place an alien into full removal proceedings under section 240, detention is governed by section 236 [§ 1226]." *Id.* "This

principle applies with overwhelming force here," Bray argued, because DHS was "bound by § 1226 for custody purposes" once it "place[d] [the petitioner] into § 240 proceedings." *Id.* at 13–14.

But this quote does not exist. What's more, *Matter of M-S-* establishes precisely the opposite principle (albeit in the credible-fear context, which is not applicable here). To be sure, not all judicial opinions are models of clarity. But Attorney General Sessions did not hide the ball here:

> The question presented is whether aliens who are originally placed in expedited proceedings and then transferred to full proceedings after establishing a credible fear become eligible for bond upon transfer. I conclude that *such aliens remain ineligible for bond*, whether they are arriving at the border or are apprehended in the United States.

*Matter of M-S-*, 27 I. & N. Dec. 509, 515 (A.G. 2019) (emphasis added).[1] Rather than faithfully representing the cited opinion, Bray's nonexistent quote more closely resembles *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005)—the case that *Matter of M-S-* finds "was wrongly decided and is overruled." 27 I. & N. Dec. at 509.

On November 21, the Court issued an Order to Show Cause (Dkt. No. 14) directing Bray to "file a response . . . explaining whether he violated Rule 11(b) and Local Rule 7.2(f), whether he complied with his duty of candor . . . and explaining whether, if such violations occurred, he should be sanctioned." Dkt. No. 14 at 3. Bray filed the required response (Dkt. No. 15) and moved to correct his habeas petition and reply brief (Dkt. No. 16). In his response, Bray explains that his errors were inadvertent, personal oversights, not the result of generative AI. Dkt. No. 15 at 1–2. He argues that his errors did not arise from a reckless

---

[1] The holding of the case is also helpfully presented in abbreviated form at the top of the first page.

disregard for the truth or objectively unreasonable conduct. *See generally* Dkt. No. 15. But the Court is not so sure.

First, Bray reveals that he obtained his erroneous *Cardenas* citation not from AI or legal research, but from a Facebook comment. That comment states, in pertinent part: "In *Cardenas v. Young*, 826 F.3d 116 (5th Cir. 2016), the Fifth Circuit made clear that when DHS detains respondents under § 236(a) in removal proceedings, they are bond-eligible before an IJ. Circuit law controls within the Fifth Circuit, regardless of what the BIA has held nationally." Dkt. No. 15-2. It is concerning enough to learn that any attorney would obtain *any* legal authority from a comment on social media—much less *the* legal authority on which his original habeas petition relied. *See* Dkt. No. 14 at 1 (noting that *Cardenas* was the habeas petition's central authority and cited it eleven times). Even more concerning is that Bray did not merely cite the proposition contained in the comment; he added pin cites and even an explanatory parenthetical—all to a case that he admits not to have verified "beyond conducting a quick Google search." Dkt. Nos. 1 ¶¶ 27–28 (citing to pages 121 of *Cardenas*); 15 at 4.

Second, Bray variously describes his false quote from *Matter of M-S-* as a "formatting mistake," Dkt. No. 15 at 2, and a "scrivener's error," Dkt. No. 15-1 ¶ 8. He states that he "inadvertently failed to remove quotation marks that had been inserted during drafting." Dkt. No. 15 at 6.[2] But there are two further compounding errors that render Bray's

---

[2] Whether quotation marks constitute a mere "scrivener's error" depends on the context. "In general, quotation marks around a passage indicate to the reader that the passage reproduces the speaker's words verbatim. They inform the reader that he or she is reading the statement of the speaker, not a paraphrase or other indirect interpretation by an author. By providing this information, quotations add authority to the statement and credibility to the author's work." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 511 (1991) (discussing the significance of quotation mark in the context of defamation).

explanation lacking. For one, the false quote was not merely bookended by quotation marks—the hallmark of a direct quotation—but also fully indented, placed on its own line, preceded by a colon, and followed by a pin cite, Dkt. No. 13 at 13, all of which are traditional indicia of a direct quotation. *See, e.g.*, THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION B5.2 at 8–9 (Columbia Law Review Ass'n et al. eds., 22d ed. 2025) (providing the rules for block quotations). Moreover, even if taken as a paraphrase, the Court fails to understand how Bray derived the cited principle from *Matter of M-S-* in good faith for the reasons described above and in the Court's Order to Show Cause (Dkt. No. 14 at 2–3).

Therefore, the Court will conduct an in-person hearing at 9:00 a.m. on January 8, 2026, in Courtroom C-216 of the United States Courthouse, 1205 Texas Ave., Lubbock, Texas 79401. Mr. Bray must be present. At the hearing, the Court expects Mr. Bray to address the following issues:

1. Rene Garibay-Robledo's habeas petition (Dkt. No. 1) and reply brief (Dkt. No. 16);
2. Whether Mr. Bray's reliance on a Facebook comment for a legal authority was "an inquiry reasonable under the circumstances" as required by Rule 11(b);
3. Whether the legal principle Mr. Bray attributes to *Matter of M-S-* is "warranted by existing law" or otherwise compliant with Rule 11(b); and
4. Whether Mr. Bray has complied with his duty of candor in his filings in this case.

So ordered on December 19, 2025.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE