UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

RENE GARIBAY-ROBLEDO,

     Petitioner,

v.

KRISTI NOEM, et al.,

     Respondents.

No. 1:25-CV-177-H

## <u>ORDER</u>

Rene Garibay-Robledo has lived in the United States illegally for over 30 years. In early 2025, he was arrested for possessing a firearm as an illegal alien and later placed in immigration detention pending removal. He has not received a bond hearing because of the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which held that "applicants for admission" must be detained without bond under Section 1225(b)(2)(A) of the INA. He now petitions this Court for a writ of habeas corpus, alleging that his detention without bond violates the INA, the Due Process Clause, and the Administrative Procedure Act. Dkt. No. 20.

But his argument fails on multiple levels. First, it flatly contradicts the statute's plain language. As an "[a]n alien present in the United States who has not been admitted," he is an "applicant for admission" subject to Section 1225's mandatory-detention provision. Second, the history of legislative changes confirms this result. Previously, aliens who entered illegally without inspection received more rights than aliens who entered lawfully. By defining "applicant for admission" to include all aliens who have not been admitted and mandating detention for this category, Congress eliminated the prior incentives to enter illegally. Finally, common sense supports this conclusion. The law, in Garibay-Robledo's

reading, would mandate detention for aliens who lawfully apply for admission, are caught at or near the border, or seek admission after entering illegally—while aliens who are able to enter illegally and remain undetected for years are entitled to potential release after being caught.  The INA, unsurprisingly, does not bestow heightened procedural protections to illegal aliens based on their stealth and impenitence.

As an "applicant for admission," Garibay-Robledo must be detained without bond under Section 1225(b)(2)(A).  His due process claim—whether substantive or procedural— fails, too.  Finally, he lacks entitlement to his requested relief under the APA.  Accordingly, the corrected petition (Dkt. No. 20) is denied.

## 1.    Background

In 1994, Garibay-Robledo illegally crossed into the United States near Laredo, Texas.  Dkt. No. 12 at 8.  Nearly thirty years later, U.S. Immigration and Customs Enforcement (ICE) detained Garibay-Robledo without bond after he was indicted for possessing a firearm in violation of 8 U.S.C. § 922(g)(5).[1]  Dkt. No. 20 ¶ 38.  He also has a prior felony theft conviction from 2000.  Dkt. No. 1-2 at 2.  Garibay-Robledo was soon placed into removal proceedings with a Notice to Appear.  Dkt. No. 20 ¶¶ 29–30.  The NTA charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  Dkt. No. 12 at 8; *see* 8 U.S.C. § 1182(a)(6)(A)(i).

---

[1] According to the affidavit in support of the criminal complaint, law enforcement executed a search warrant on Garibay-Robledo's residence and seized four firearms, 6.8 grams of cocaine, and approximately 450 rounds of mixed caliber ammunition.  *See* No. 5:25-CR-177, Dkt. No. 3 at 3–4 (W.D. Tex.); *see also id.* Dkt. No. 19 (unsealed indictment).  The indictment was later dismissed. *Id.* Dkt. No. 38.

While detained, Garibay-Robledo challenged ICE's custody determination—including its decision that he must be detained without bond—before an immigration judge. Dkt. No. 20 ¶ 2.  The IJ found that he lacked jurisdiction to consider Garibay-Robledo's bond request.  *Id.*  This denial was based on the Board of Immigration Appeals' recent opinion in *Matter of Yajure Hurtado*, holding that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings.  29 I. & N. Dec. at 220.  Garibay-Robledo did not appeal.  Dkt. No. 11 at 7–8.

Instead, Garibay-Robledo filed a petition for a writ of habeas corpus.  Dkt. No. 1.  After the Court repeatedly noted that the petition's arguments relied on a non-existent Fifth Circuit case, Dkt. Nos. 5; 9; 14, Garibay-Robledo moved for leave to file a corrected petition, Dkt. Nos. 16; 16-1.  The Court granted the motion.  Dkt. No. 17 at 1.  The corrected petition states three claims for relief.  First, Garibay-Robledo alleges that his detention without bond violates the INA.  Dkt. No. 20 ¶¶ 23–33.  In Garibay-Robledo's view, the proper statutory authority for his detention is Section 1226(a), which permits IJs to release aliens on bond while their removal is pending.  *Id.* ¶ 32.  Second, Garibay-Robledo contends that his detention without bond violates his due process rights.  *Id.* ¶¶ 34–41.  Finally, Garibay-Robledo alleges that his detention without bond violates the APA.  *Id.* ¶¶ 42–48.

The Court ordered the respondents to show cause why Garibay-Robledo's petition should not be granted.  Dkt. No. 6; *see* 28 U.S.C. § 2243.  The respondents timely answered

(Dkt. Nos. 11; 12), and Garibay-Robledo replied (Dkt. No. 13).[2]  Currently, Garibay-Robledo is detained at the Bluebonnet Detention Center.  Dkt. No. 20 ¶ 1.

## 2.    Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases.  *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).  Habeas exists solely to "grant relief from unlawful imprisonment or custody."  *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

## 3.    Analysis

As noted above, Garibay-Robledo raises three claims in his habeas petition—one involving Sections 1225 and 1226 of the INA, one based on the Fifth Amendment's Due Process Clause, and another based on the APA.  Dkt. No. 20 ¶¶ 23–48.  His arguments in support of the first two claims are similar to those the Court has rejected in recent cases.[3] Even so, the Court considers the arguments raised in Garibay-Robledo's briefing to address

---

[2] Garibay-Robledo moved to file a corrected reply brief, Dkt. Nos. 16; 21, after the Court noted that it contained a fabricated quotation, Dkt. No. 14 at 2–3.  The Court granted the motion.  Dkt. No. 17 at 1.

[3] *See Montelongo Zuniga v. Lyons*, __ F. Supp. 3d __, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025); *Gomez Hernandez v. Lyons*, __ F. Supp. 3d __, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Calderon Lopez v. Lyons*, __ F. Supp. 3d __, No. 1:25-CV-226, 2026 WL 44683 (N.D. Tex. Jan. 7, 2026).

whether bond-less detention of aliens present in the United States without admission violates the INA, the Constitution, or the APA. On each count, the answer is no.

### A. Garibay-Robledo's detention claim does not present an exhaustion problem.

Typically, a "person seeking habeas relief must first exhaust available administrative remedies." *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018). The respondents urge that Garibay-Robledo's detention claim must be dismissed for failure to exhaust. Dtk. No. 11 at 7–8. But the exhaustion requirement in this context is likely prudential, not jurisdictional. *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion only for a "final order of removal"). That said, it would be "an exercise in futility" for Garibay-Robledo to appeal to the BIA. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). The BIA issued *Yajure Hurtado* on September 5, 2025. Given the recency, there is little prospect that the BIA would reconsider *Yajure Hurtado* here. Thus, Garibay-Robledo's habeas petition does not present an exhaustion problem. *See id.*

### B. The INA authorizes Garibay-Robledo's detention without bond.

Garibay-Robledo's claim under the INA involves the interplay between two related statutes. First is Section 1225(b)(2)(A), the INA's mandatory-detention provision. That statute sets out detention requirements for "applicant[s] for admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Specifically, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* No one disputes that, subject to certain

narrow exceptions,[4] Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  Nothing in Section 1225 "says anything whatsoever about bond hearings." *Id.*

Section 1226(a), on the other hand, permits discretionary detention.  "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).  Instead of detention, the Attorney General "may" release the alien on bond, "[e]xcept as provided in subsection (c)." *Id.* § 1226(a), (2)(A)–(B).  Section 1226(c) in turn requires the Attorney General to "take into custody any alien" who is inadmissible or removable for involvement in certain criminal offenses. *Id.* § 1226(c)(1)(A)–(E); *see Jennings*, 583 U.S. at 303.  If Section 1226(c) does not apply, and if an alien is released on bond pending removal, the Attorney General may still re-detain him "at any time." 8 U.S.C. § 1226(b).

The respondents only justify Garibay-Robledo's detention under Section 1225(b)(2)(A).  *See* Dkt. No. 11 at 9.  The question, then, is whether Garibay-Robledo—who surreptitiously crossed the border without inspection and has resided illegally in the United States for decades—is an "applicant for admission." 8 U.S.C. § 1225(b)(2)(A).  If so, he "shall be detained" without bond.  *Id.*  If not, he is entitled—at the very least—to a bond hearing under Section 1226(a).

---

[4] The Secretary of Homeland Security may temporarily parole into the United States "any alien applying for admission" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).  But once the purposes of the parole have been served, the alien must immediately be returned to custody, and his case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

i.    As an "applicant for admission," Garibay-Robledo is subject to
mandatory detention without bond under Section 1225(b)(2)(A).

As always, the Court "begins with the statutory text, and ends there as well if the text

is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).  Here, the text

is as unambiguous as can be.  Section 1225 broadly defines "applicant for admission" as

"[a]n alien present in the United States who has not been admitted or who arrives in the

United States."  8 U.S.C. § 1225(a)(1).  Garibay-Robledo is an "alien."  He is "present in the

United States."  And he "has not been admitted" because he did not "lawful[ly] ent[er] [the

country] after inspection and authorization by an immigration officer."  *Id.* § 1101(a)(13)(A)

(defining "admission" and "admitted").  As an "applicant for admission" who "is not

clearly and beyond a doubt entitled to be admitted," Garibay-Robledo "shall be detained"

under Section 1225(b)(2)(A).  He is not entitled to a bond hearing.

Garibay-Robledo resists this straightforward conclusion.  As he sees it, Section

1225(b)(2) applies only to "'applicants for admission' who are encountered at or near the

border, or in the context of initial inspection and processing."  Dkt. No. 21 at 12.  It does

not, in his view, govern those aliens "already present in the United States and placed in

removal proceedings."  *Id.* at 11.  Why?  Because when it comes to "applicant[s] for

admission," the statute requires detention "if the examining immigration officer determines

that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted."  8

U.S.C. § 1225(b)(2)(A) (emphasis added).  As the argument goes, aliens who have resided in

the United States for years after entering illegally are not "seeking admission" and thus are

not subject to mandatory detention.

This argument suffers from several flaws.  First, it ignores the plain text of the

statute.  Section 1225 expressly defines "applicant for admission."  That definition covers

"[a]n alien present in the United States who has not been admitted *or* who arrives in the United States."  8 U.S.C. § 1225(a)(1) (emphasis added).  The word "or" is key.  As the Supreme Court has often said, "'or' is 'almost always disjunctive.'"  *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)).  Nothing in Section 1225(b)(2)(A) suggests otherwise.  Therefore, the term "applicant[s] for admission" does not just cover arriving aliens; it also covers aliens who, like Garibay-Robledo, are present in the United States—for decades even—without admission.

This interpretation tracks how other courts understand the term.  In *Jennings*, the Supreme Court explained that, "[u]nder [Section 1225], an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'"  583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)).  And the BIA—with its considerable expertise in immigration law—recognizes that Congress' "unconventional" definition of "applicant for admission" includes "not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission."[5]  *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 743 (BIA 2012).  At any rate, "[w]hen a statute includes an explicit definition, [the Court] must follow that definition."  *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)).

Moreover, Garibay-Robledo hair-splitting emphasis on the phrase "seeking admission" elevates form over substance.  As the Court previously explained, "[t]here is no

---

[5] Of course, the Court does not reflexively defer to the BIA's interpretation of Section 1225.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).  But given the BIA's specialized knowledge of the INA, the Court may consider its "power to persuade."  *Id.* at 402 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

material disjunction—by the terms of the statute or the English language—between the
concept of 'applying' for something and 'seeking' something." *Garibay-Robledo v. Noem*, __
F. Supp. 3d __, No. 1:25-CV-177, 2025 WL 3264482, at *5 (N.D. Tex. Sept. 15, 2025)
(order on reconsideration).  An "applicant" is "[s]omeone who requests something."
*Applicant*, Black's Law Dictionary (12th ed. 2024).  Thus, an "applicant for admission," in
ordinary English usage, is one who requests (or seeks) admission into the United States.  *See
Apply (for)*, Merriam-Webster Thesaurus (noting that to "seek" is a synonym of to "apply"
for) (last visited December 17, 2025).[6]  It is unclear how an alien can apply for admission
without seeking it.

Other parts of Section 1225 illustrate the point.  Section 1225(a)(3) provides that
"[a]ll aliens . . . [w]ho are applicants for admission *or otherwise seeking admission* . . . shall be
inspected."  (emphasis added); *see also Shi v. Lyons*, __ F. Supp. 3d __ , No. 1:25-CV-274,
2025 WL 3637288, at *5 (S.D. Tex. Dec. 12, 2025) (explaining that Section 1225(a)(3)'s
"use of 'otherwise' renders 'applicants for admission' a subset of 'seeking admission'—i.e.,
the former represents one example of the latter").  And Subsection 1225(a)(5) states that
"[a]n applicant for admission may be required to state under oath any information sought
by an immigration officer regarding the purposes and intentions of the applicant *in seeking
admission* to the United States."  (emphasis added).  The logical import of this phrasing is
that an "applicant for admission" is also "seeking admission" under the statute.  "Insofar as
the term 'applicant for admission' is more passive than 'seeking admission,' this is inherent
in the nature of agent nouns and their corresponding gerunds."  *Garibay-Robledo*, 2025 WL

---

[6] https://www.merriam-webster.com/thesaurus/apply%20(for) [https://perma.cc/7FNU-M7C9].

3264482, at *5.  As such, Section 1225 cannot be read to limit its application to aliens "encountered at or near the border."  Dkt. No. 21 at 12.

In fact, if Congress wanted to limit Section 1225(b)(2)(A) to arriving aliens, it could have done so.  Neighboring provisions in Section 1225 expressly refer to "arriving alien[s]." *See, e.g.*, 8 U.S.C. §§ 1225(a)(2) ("arriving alien who is a stowaway is not eligible to apply for admission or to be admitted"), 1225(d)(2) (addressing "authority to order detention and delivery of arriving aliens" coming to the United States via vessel or aircraft).  Yet Congress did not use "arriving alien" in Section 1225(b)(2)(A).  Generally, when Congress "uses certain language in one part of the statute and different language in another, the [C]ourt assumes different meanings were intended.'"  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (quotation omitted).  So the fact that Congress did not refer to "arriving aliens" in Section 1225(b)(2)(A), but did so in other parts of the statute, suggests that the mandatory-detention provision is not limited to aliens arriving at the border.

In sum, the Court agrees with the respondents that Garibay-Robledo is subject to mandatory detention under Section 1225(b)(2)(A).  True, Garibay-Robledo is not an arriving alien.  But the statutory text is unambiguous: "[A]n alien present in the United States who has not been admitted" is also an "applicant for admission."  8 U.S.C. § 1225(a)(1).  And if an "applicant for admission" is "not clearly and beyond a doubt entitled to be admitted," he "shall be detained" pending his removal proceedings.  *Id.* § 1225(b)(2)(A).  When a statute is this clear, it must be applied according to its terms. *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).

### ii.    The statutory history of the INA confirms the Court's reading of the mandatory-detention provision.

"Statutory history, 'the record of enacted changes Congress made to the relevant statutory text over time,' can also provide helpful context" for statutory interpretation. *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (emphasis omitted)).  Here, the statutory history of the INA confirms what the plain text already makes clear: aliens who illegally entered the United States and are later apprehended in the interior are "applicant[s] for admission" who must be detained pending removal under Section 1225(b)(2)(A).

In 1996, Congress added the broad definition of "applicant for admission" to the INA in the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA).  Pub. L. No. 104-208, 110 Stat. 3009.  "Prior to the [IIRIRA], the INA assessed status on the basis of 'entry' as opposed to 'admission.'"  *Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) (quoting 8 U.S.C. § 1101(a)(13) (1994)).  Under this so-called entry doctrine, aliens who snuck into the United States without inspection were entitled to the procedural and substantive protections afforded in deportation proceedings.  *Id.*  Yet aliens who presented themselves to immigration officials for inspection—say, at a port of entry—were subject to "more summary exclusion proceedings."  *Id.* (quotation omitted).  This distinction—where aliens who followed the rules and presented for inspection were worse off than those who broke the law—created "a perverse incentive to enter at an unlawful rather than a lawful location."  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).

IIRIRA did away with this anomaly.  Congress replaced the entry doctrine with a criterion based on admission, which it defined as "*lawful* entry . . . after inspection and authorization."  8 U.S.C. § 1101(a)(13)(A) (emphasis added).  Congress also added Section

– 11 –

1225(a)(1)—the definition of "applicant for admission"—and mandated detention for all such applicants while their removal proceedings play out. *See* 8 U.S.C. § 1225(b)(2)(A). By defining "applicant for admission" to include all aliens who have not been admitted, Congress thus eliminated the previous incentives to enter the country illegally.

Garibay-Robledo's interpretation of Section 1225(b)(2)(A) marks a return to those bygone days. On his view, aliens who bypass inspection and settle down in the interior have more procedural protections than aliens who present themselves for inspection at the border. *See* Dkt. No. 21 at 11–12. But that, of course, is "the precise situation that Congress intended to do away with by enacting" IIRIRA. *United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024). Thus, the INA's statutory history supports the view that Section 1225(b)(2)(A) requires detention without bond for all applicants for admission—including those who entered the country illegally and have resided here for years.

### iii.    Garibay-Robledo's counterarguments are not persuasive.

Garibay-Robledo lodges several additional arguments against applying Section 1225(b)(2)(A). None have merit. Garibay-Robledo first points to past practice, noting that—until this year—aliens who entered the country illegally and were later placed in standard removal proceedings received bond hearings under Section 1226(a), unless their criminal history made them ineligible. Dkt. No. 20 ¶ 21. Indeed, after IIRIRA, the Executive Office of Immigration Review issued an interim rule explaining that aliens present in the United States without admission are typically eligible for bond. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). That practice continued for several decades.

– 12 –

Then, in July 2025, the U.S. Department of Homeland Security distributed an
internal policy (which was later leaked) titled "Interim Guidance Regarding Detention
Authority for Applicants for Admission." *See Maldonado Vazquez v. Feeley*, __ F. Supp. 3d
__, No. 2:25-CV-1542, 2025 WL 2676082, at *5 & n.2 (D. Nev. Sept. 17, 2025) (describing
the leaked DHS policy and noting that the government did not contest its authenticity). The
policy advised that DHS, in coordination with the U.S. Department of Justice, "revisited its
legal position" and concluded that Section 1225, not Section 1226, "is the applicable
immigration detention authority for all applicants for admission." *ICE Memo: Interim
Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No.
25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[7] Thus, DHS maintained the position—
which the BIA later adopted in *Yajure Hurtado*, 29 I. & N. Dec. at 220—that all aliens who
entered the country without admission are ineligible for bond.[8] According to Garibay-
Robledo, this new policy is "in direct contravention of the plain language of" the INA. Dkt.
No. 20 ¶ 22.

On close review, this background hurts Garibay-Robledo more than it helps. The
post-IIRIRA interim rule states that "*[d]espite being applicants for admission*, aliens who are
present without having been admitted or paroled . . . will be eligible for bond and bond
redetermination." 62 Fed. Reg. at 10323 (emphasis added). "The effect of this change," the

---

[7] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

[8] On December 18, 2025, the Central District of California purported to vacate the DHS policy under the Administrative Procedure Act. *Maldonado Bautista v. Noem*, No. 5:25-CV-1873, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). But as this Court explained in *Calderon Lopez v. Lyons*, __ F. Supp. 3d __, No. 1:25-CV-226, 2025 WL 3683918 (N.D. Tex. Dec. 19, 2025), that purported relief violated the INA. *Id.* at *10–11. Even assuming the DHS policy is now vacated, the Central District "declined to set aside [the] broader, independent decision" in *Yajure Hurtado*. *Id.* at *1.

rule goes on to explain, "is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not." *Id.* The clear implication of this language is that, despite possessing statutory authority to deny bond to all non-admitted aliens, the government previously declined to exercise the full extent of its authority under the INA.

When the current Trump Administration took office, it was free to reconsider the government's position. As the BIA explained in *Yajure Hurtado*, neither "DHS or its predecessor, the Immigration and Naturalization Service, previously rais[ed] the current [detention] issue" before the BIA. 29 I. & N. Dec. at 225 n.6. Therefore, while "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection," *id.*, that past practice was not required by binding case law. No doubt, "the longstanding practice of the government . . . can inform a court's determination of what the law is." *Loper Bright*, 603 U.S. at 386 (citation modified). "But a 'long-established practice' does not justify a rule that denies statutory text its fairest reading." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015). Here, the government's past practice of affording bond hearings to non-admitted aliens cannot overcome the text's clear command.

Next, Garibay-Robledo suggests that the respondents' interpretation of Section 1225 cannot be squared with Section 1226. *See* Dkt. Nos. 20 ¶ 30; 21 at 11–13. Other courts and petitioners have labeled this a superfluity argument. *See, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1151–52 (D. Minn. 2025); *Yajure Hurtado*, 29 I. & N. Dec. at 221–22. To understand the point, some background is helpful. Recall that Section 1226(c) provides exceptions to the discretionary-detention rule. It specifically requires detention of aliens who are inadmissible or removable for involvement in certain criminal offenses. 8 U.S.C.

§ 1226(c)(1)(A)–(E); *see Jennings*, 583 U.S. at 289.  Earlier this year, Congress amended

Section 1226(c) with the Laken Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Under the

LRA, the Attorney General must detain any alien who (1) is inadmissible for having entered

the country without admission or parole, and (2) is charged with or convicted of specific

violent or property-based criminal offenses.  8 U.S.C. § 1226(c)(1)(E)(i)–(ii).  The argument

goes like this: The LRA requires detention without bond for a subset of non-admitted aliens

present in the United States—that is, those responsible for certain crimes.  Therefore, it

cannot be that Section 1225(b)(2)(A)—enacted nearly 30 years before the LRA—already

mandates detention for all such aliens.  Otherwise, the LRA's more specific provisions

would be superfluous.[9]

For at least three reasons, the Court is unconvinced.  First, as Judge Charles

Eskridge recently explained, "prior Administrations for decades applied [Section] 1226(a) to

individuals like" Garibay-Robledo.  *Cabanas v. Bondi*, No. 4:25-CV-4830, 2025 WL 3171331,

at *6 (S.D. Tex. Nov. 13, 2025).  Therefore, "at the time of enactment, the Laken Riley Act

---

[9] Although Garibay-Robledo does not explicitly raise this argument in his petition, he previously
presented it in the attachments to his motion for reconsideration of his application for a TRO.  *See*
Dkt. No. 8-1 at 18, 34; *see also* Dkt. No. 9 at 7–9 (order denying motion for reconsideration).

In his reply brief, Garibay-Robledo pursues a different and, candidly, even less compelling line of
argument: that his placement into Section 240 removal proceedings necessitates the application of
8 U.S.C. § 1226(a).  Section 1225 is inapplicable, he argues, because it applies to "expedited
removal or other border-based processes."  Dkt. No. 21 at 17.  But the Court does not consider
arguments raised for the first time in a reply brief.  *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F.
App'x 307, 315 (5th Cir. 2008) ("It is the practice of . . . the district courts to refuse to consider
arguments raised for the first time in reply briefs.").  Further, the Court need not repeat its analysis
as to why Section 1225 is not limited to "border-based" applications, *see supra*, § 3.B.i–ii.  As to
Garibay-Robledo's point regarding expedited removal, it is sufficient to note that he is not detained
pursuant to the statutory provisions requiring expedited removal proceedings.  *E.g.*, 8 U.S.C. §
1225(b)(1)(A)(i).  Rather, he is detained pursuant to Section 1225(b)(2)(A), which explicitly applies
to "proceeding[s] under [S]ection 1229a"—that is, Section 240 of the INA.  8 U.S.C.
§ 1225(b)(2)(A).  The Court thus finds Garibay-Robledo's argument that detention under Section
1226 inexorably follows from the initiation of Section 240 removal proceedings to be foreclosed by
the plain text of the INA.

*did* have [real] effect, given that it *required* mandatory detention for criminal, inadmissible aliens who had not been subject to it . . . by longstanding practice of prior Administrations." *Id.* (emphasis in original). So, the LRA was not meaningless—it narrowed the discretion afforded to any Administration exercising detention authority under Section 1226.

Second, "it is perfectly possible to interpret the provisions" as taking "a 'belt and suspenders approach' to legislation." *Mejia Olalde v. Noem*, No. 1:25-CV-168, 2025 WL 3131942, at *4 (E.D. Mo. Nov. 10, 2025) (Divine, J.) (quoting *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020)). Section 1226(c) regulates when the Attorney General must take aliens into custody. *Id.* Its detention mandate kicks in "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1). Section 1225, on the other hand, does not include a timeline. *Mejia Olalde*, 2025 WL 3131942, at *4. It only says that the alien "shall be detained." 8 U.S.C. § 1225(b)(2)(A). It is entirely reasonable, then, to interpret the LRA as providing a temporal gloss on the Executive's detention authority. *See Duke v. Univ. of Tex. at El Paso*, 663 F.2d 522, 526 (5th Cir. 1981) (noting that courts should "avoid[]" interpretations "which render parts of a statute inoperative or superfluous"). On that understanding, the LRA adds something that Section 1225(b)(2)(A) lacks.

Lastly, any superfluity, standing alone, is not enough to depart from the clear statutory text. The Supreme Court "has often recognized [that] '[s]ometimes the better overall reading of [a] statute contains some redundancy.'" *Barton v. Barr*, 590 U.S. 222, 239 (2020) (quoting *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019)). More to the point, "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate

– 16 –

another portion of the statute contrary to its text." *Id.*  Indeed, the canons of statutory construction should only "be used to resolve remaining ambiguity," not to inject it where it does not exist.  *Moore*, 71 F.4th at 395.  Because the statutory text is clear, the Court must apply it as written.

Two final points.  First, Garibay-Robledo notes that many district courts across the country have rejected the respondents' position.  *See* Dkt. No. 20 ¶ 27.  That does not, however, make them right.  This case turns on the statutory text—not on the opinions of other district courts, no matter how informative they may be.  Even so, Garibay-Robledo's survey of district court authority is not as monolithic as it may seem.  Many courts— including several in the Fifth Circuit—have concluded that petitioners like Garibay-Robledo are not entitled to a bond hearing.[10]  Until a higher authority resolves this issue for good, the Court concludes that the INA authorizes mandatory detention for all non-admitted aliens under Section 1225(b)(2)(A).

Second, Garibay-Robledo continues to claim that an individualized bond hearing is mandated by binding Fifth Circuit precedent.  *Compare* Dkt. No. 1 ¶ 34 (claiming that the respondents' failure to provide a bond hearing violates binding "Fifth Circuit precedent"), *with* Dkt. No. 20 ¶¶ 24, 33 (claiming the same in the corrected petition).  Garibay-Robledo's counsel, John M. Bray, has since clarified that the non-existent Fifth Circuit case supporting this contention in the original petition was obtained from a Facebook comment.  Dkt. No.

---

[10] *See, e.g., Cabanas*, 2025 WL 3171331, at *4; *Mejia Olalde*, 2025 WL 3131942, at *2; *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *3 (N.D. Tex. Dec. 13, 2025); *Rodriguez v. Noem*, __ F. Supp. 3d __, No. 9:25-CV-320, 2025 WL 3639440, at *2 (E.D. Tex. Dec. 10, 2025); *Sandoval v. Acuna*, 6:25-CV-1467, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025); *Vargas Lopez v. Trump*, __ F. Supp. 3d __, No. 8:25-CV-526, 2025 WL 2780351, at *2 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, __ F. Supp. 3d __, No. 3:25-CV-2325, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025). *See also supra*, note 4 (citing cases from this Court).

15-1 at 1 ¶ 2.  Because the corrected petition simply restates the previous claim without any supporting citation, however, it is unclear what (if any) Fifth Circuit case could substantiate this contention.  Accordingly, Bray is once again reminded of his obligations under Federal Rule of Civil Procedure 11.  *See Willy v. Coastal Corp.*, 855 F.2d 1160, 1172 (5th Cir. 1988) (finding citations to "nonexistent rules of law" sanctionable under Rule 11); *Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-CV-281, 2024 WL 4882651, at *2–3 (E.D. Tex. Nov. 25, 2024) (same).

### C.    The Due Process Clause does not require the government to give Garibay-Robledo a bond hearing.

Next is Garibay-Robledo's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment.  Dkt. No. 20 ¶¶ 34–41.  Garibay-Robledo devotes only a few sentences to this claim, arguing that he "fundamental liberty interest" in being free from imprisonment, and that his detention without "access to a bond hearing strips [him] of the individualized determination required by due process."  *Id.* ¶¶ 36–37.  He does not clarify whether his challenge is based on substantive or procedural due process.  But either way, he is not entitled to relief.

Start with substantive due process.  That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'"  *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).  While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures.  The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of

noncitizens." *Muñoz*, 602 U.S. at 911–12.  To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process."  *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."  *Id.* at 526.  Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better.  As an "applicant for admission," Garibay-Robledo has "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140; *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").  With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297.  No part of

the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Garibay-Robledo is not entitled to a bond hearing as a matter of procedural due process.

### D.    Garibay-Robledo is not entitled to relief under the APA.

Finally, Garibay-Robledo argues that the respondents' failure to provide him with an individualized custody redetermination hearing "constitutes unlawful agency action under the APA." Dkt. No. 20 ¶ 48. The theory of his APA claim, however, is unclear. In one paragraph, he complains of the "BIA's reversal of decades of established law" without adequate explanation. *Id.* ¶ 46; *cf.* 5 U.S.C. § 706(2)(A) (requiring the reviewing court to "hold unlawful and set aside" agency actions found to be "arbitrary" and "capricious"). But in the subsequent paragraph, he complains of the IJ's refusal to exercise jurisdiction, "treating [him] as subject to mandatory detention" under Section 1225(b). *Id.* ¶ 47; *cf.* 5 U.S.C. § 706(1) (requiring the reviewing court to "compel agency action unlawfully withheld or unreasonably delayed").

But no matter: the real trouble arises when Garibay-Robledo asks the Court to "grant habeas relief to remedy the violation." *Id.* ¶ 48. Section 704 of the APA states, in no uncertain terms, that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review." 5 U.S.C. § 704 (emphasis added). Because Garibay-Robledo requests habeas relief as the remedy for his APA claim, he unwittingly admits that there is, in fact, an adequate remedy outside of the APA. Moreover, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the invalidity of their confinement' these claims must be brought in habeas." *P.B.*, 2025 WL 3632752, at *9 (O'Connor, C.J.) (quoting *Trump v. J.G.G.*, 604

U.S. 670, 672 (2025)); *cf. Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (same, in § 1983 context).  The APA thus does not provide for judicial review of his claim.

4.    **Conclusion**

In short, Garibay-Robledo, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A).  Nothing about the INA, the Due Process Clause, or the APA requires a contrary conclusion.  Thus, the corrected petition for a writ of habeas corpus (Dkt. No. 20) is denied.

So ordered on January 9, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE